SMITH, executrix, *v.* NIX.

No. 16920.   January 16, 1950.

404

*Barrett & Hays,* for plaintiff.

*Morgan Belser,* for defendant.

HAWKINS, Justice. (After stating the foregoing facts.) ■ Code (Ann. Supp.) § 58-1068 provides that the manufacture, sale, and distribution of spirituous liquors is not a right in this State, but merely a privilege granted to those to whom a license is issued, and this court has held that a license to sell spirituous liquors is neither a contract nor a property right in the licensee, but a mere permit to do what would otherwise be an offense against the general law. *Ison v. Mayor & Council of Griffin,* 98 *Ga.* 623 (25 S. E. 611); *Owens v. Rutherford,* 200 *Ga.* 143, 149 (36 S. E. 2d, 309).

In order for one to have the privilege of engaging in the sale

of alcoholic beverages, a majority of the voters of the county in which he proposes so to engage must have authorized the sale thereof in that county at an election called and held as prescribed by law. Code (Ann. Supp.) § 58-1002 et seq.

By the terms of the statute (Code, Ann. Supp., § 58-1011), a "retailer" or "retail distributor" is defined as "any person, firm, or corporation engaged in selling, at retail, any distilled spirits or alcohol, for beverage purposes."

By Code (Ann. Supp.) § 58-1022, the State Revenue Commissioner is authorized "To issue licenses provided for in this Chapter, and to decline to issue any license to any person or corporation who in his reasonable discretion are not proper persons to have such permits."

Code (Ann. Supp.) § 58-1031 provides that no State license shall be granted until a municipal or county license, as the case may be, is first presented, and that the proper municipal or county authorities shall have full authority to pass "on the character, reliability, and other qualities of fitness before issuing such license."

Code (Ann. Supp.) § 58-1032 prescribes the minimum license fees for the manufacturers, wholesalers and retailers, and § 58-1039 provides that no license granted under this Chapter shall be transferable without the consent of the Revenue Commissioner.

Code (Ann. Supp.) § 58-1065 makes it unlawful for any person, firm, or corporation to sell spirituous liquors or beverages without first obtaining a license so to do. See also § 58-1069.

It will thus be seen that the business of selling alcoholic or spirituous liquors or beverages is strictly regulated, and under the provisions of this statute every "person," "firm," or "corporation" engaging in any of the businesses there authorized is required to obtain a license so to do, and great latitude is granted the authorities in passing upon and determining the "character, reliability, and other qualities of fitness" of the applicants for licenses.

By Code (Ann. Supp.) § 58-1074 it is provided that no retail license shall be issued to any applicant or person, unless it is shown by a certificate from the ordinary of the county of the applicant's residence that the applicant has been a bona fide

resident of the county for at least twelve months immediately preceding the application; and that no license shall be issued to any person who has not been a resident of the State for at least twelve months immediately preceding the issuance thereof, or of a county in which liquor may be legally sold; and by § 58-1071 it is provided that "There shall be no exception from the permit fees, license fees, and/or tax as provided by this Chapter in favor of any person whatsoever." Under the foregoing provisions of the law, a person, firm, or corporation in Georgia cannot lawfully engage in the liquor business by proxy, or under the name of another, but any and all persons, firms, or corporations who desire to engage therein must first obtain a license so to do in their own name. It would, to a large extent, destroy the effectiveness of the regulations prescribed by this law if one were permitted to engage in such business in the name of and under a license granted to another, and would open the door for every gangster and racketeer who could not himself obtain a license or permit to engage in such business if he could secure a license in the name of some other individual. Such is not the purpose or intent of the law, but its purpose and intent is to the contrary. There can be no such thing, under the terms of this law, as a silent or dormant partner in the liquor business. If a partnership desires to engage therein, the partnership must apply for and obtain a license as such; and if a person actually engages in the liquor business as a silent or dormant member of a partnership in the name of and under a license issued to an individual, he is guilty of a violation of the statute.

A case very much in point is that of *Garrison* v. *Burns*, 98 *Ga.* 762 (26 S. E. 471). In that case Burns brought suit against Garrison to rescind a contract and recover certain personalty, consisting largely of barroom fixtures and appurtenances. It appeared that before the sale to Garrison, Burns had been engaged in the retail liquor business in the City of Macon, and for this purpose he had taken out a license in the name of "James Burns & Co.," though there was in fact no partnership, and no person interested in the business as the "Co." Liquor licenses not being transferable, Burns had this particular one made out as above stated in order that it might be used by anyone to whom he should sell his business. This business was included in

the sale to Garrison. Burns falsely told the city inspector that Garrison was a member of the firm of James Burns & Co., so as to enable Garrison to go on with the business. He and Garrison had an agreement to that effect, both knowing that the license could not be lawfully assigned. In dealing with this situation, this court said: "It will thus be seen that the parties to the contract under review necessarily contemplated and intended that there should be by one of them a violation of the statute which makes it penal to sell spirituous liquors without a license. . . The license in the name of 'James Burns & Co.,' under which he [Garrison] did business, was, as to him, the same thing in law as no license at all; and upon a disclosure of the truth, would have afforded him no protection from a criminal prosecution."

■ From what has been said, it is apparent that the contract between Smith and Nix, as alleged in the petition, involves an illegal enterprise in violation of a criminal statute. Code § 20-501 provides: "A contract to do an immoral or illegal thing is void. If the contract be severable, that which is legal will not be annulled by that which is illegal." In *Tanner* v. *Wilson*, 193 *Ga.* 211, 215 (17 S. E. 2d, 581), it is held: "He who comes into equity must come with clean hands, 'is . . a universal rule guiding and regulating the action of equity courts in their interposition on behalf of suitors for any and every purpose, and in their administration of any and every species of relief.' Under this maxim, 'whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' 1 Pomeroy's Equity Jurisprudence, 737, 738 § 397; *Coleman, Burden & Warthen Co.* v. *Dannenberg Co.*, 103 *Ga.* 784 (30 S. E. 639, 41 L.R.A. 470, 68 Am. St. R. 143); *Whittington* v. *Summerall*, 20 *Ga.* 345; *Peacock* v. *Terry*, 9 *Ga.* 137; *May* v. *Huntington*, 66 *Ga.* 208; *Deen* v. *Williams*, 128 *Ga.* 265 (57 S. E. 427); *Tune* v. *Beeland*, 131 *Ga.* 528 (62 S. E. 976); *Bagwell* v. *Johnson*, 116 *Ga.* 464 (42 S. E. 732); *Sewell* v. *Norris*, 128 *Ga.* 824 (58 S. E. 637, 13 L.R.A. (N.S.) 1118); *State Highway*

*Board* v. *Baxley,* 190 *Ga.* 292 (9 S. E. 2d, 266)." See also *Garrison* v. *Burns,* 98 *Ga.* 762 (supra); *Garland* v. *Isbell,* 139 *Ga.* 34 (76 S. E. 591); *Abbott Furniture Co.* v. *Mobley,* 141 *Ga.* 456 (81 S. E. 196). The trial court did not err in sustaining the general demurrer and dismissing the plaintiff's petition.

What is here held is not in conflict with the decision of this court in *Moore* v. *Harrison,* 202 *Ga.* 814 (44 S. E. 2d, 551), for the question here presented was not there adjudicated.

*Judgment affirmed. All the Justices concur, except Head, J., who dissents.*