A07A0959, A07A1133. ROSENFELD v. ROSENFELD; and vice versa.
(648 SE2d 399)

BLACKBURN, Presiding Judge.

In this minority shareholder action brought by a wife against her husband as the majority shareholder and presiding officer of their family business corporation, the wife (Mary Katherine Rosenfeld) also sought to recover for damages she suffered as an alleged partner to her husband (William Spencer Rosenfeld) in a family business partnership. Finding there was no partnership, the jury awarded the wife damages only for her husband's actions respecting the family corporation. In Case No. A07A0959, the wife appeals the trial court's denial of her motion for new trial on the partnership issue, claiming that the undisputed evidence demanded a finding that there was a partnership. As some evidence showed there was no partnership, we affirm this judgment. In Case No. A07A1133, the husband seeks a new trial on the corporation claim, asserting various errors. Discerning no error, we affirm this judgment also.

Construed in favor of the verdict, the evidence shows that the husband owned 75 percent of the stock in and served as chief executive officer of Arborguard, Inc., while the wife who served as chief financial officer owned the remaining 25 percent. They also served as directors in the corporation. They later individually and jointly purchased various pieces of equipment that were leased to the corporation, with all lease proceeds going into a business account in both of their names and with any funds remaining (after paying expenses and loans on the equipment) being transferred to a family checking account, which net funds amounted to over $30,000 a month and which they used to pay family and personal expenses.

After 30 years of marriage, the husband filed for a divorce and terminated the wife's access to the corporation and to the lease proceeds. Although both had been using corporate funds to fund personal and family expenses, now only the husband continued to do such, over the wife's objection. The husband agreed to pay the wife $11,000 a month ($4,000 through corporate salaries to her and a son and $7,000 from lease proceeds) as temporary support pending the divorce trial.

In her capacity as minority shareholder, the wife brought the present action against the husband, claiming that he as majority

shareholder and as the presiding officer in the corporation had breached fiduciary duties owed her when he cut her off from the corporation and alone used corporate funds to pay his personal expenses. See *Harris v. Harris*[1] (spouses seeking divorce may bring separate action asserting commercial claims against each other). Alleging the leasing operation was an equal partnership between them (allegedly known as "K & S Leasing"), she further asserted that he had breached fiduciary duties owed her as a partner by not distributing 50 percent of the net leasing proceeds to her after the divorce petition was filed.

Following a trial, the jury found no partnership existed and accordingly awarded the wife nothing on her partnership claims. On the corporate claims, the jury found that the husband had breached fiduciary duties owed to the wife and awarded her $125,000 in compensatory damages. Both parties have appealed.

## Case No. A07A0959

1. In her appeal, the wife's two enumerations concern only the jury's finding of no partnership. Citing OCGA §§ 5-5-20 and 5-5-21, she argues that the undisputed evidence demanded a finding of a partnership and that the trial court accordingly erred in denying her motion for new trial on her partnership claim. Because we hold that some evidence supported a finding of no partnership, we affirm.

The applicable standard of review is clear.

> A trial court may grant a motion for new trial if, in the exercise of its discretion, it finds that a jury's verdict was against the weight of the evidence. However, when a trial court denies such a motion, the appellate court does not have the discretion to grant a new trial on that ground. *We can only review the evidence to determine if there is any evidence to support the verdict.* The standard of appellate review of the denial of a motion for new trial on the general grounds is essentially the same as that applicable to the denial of a motion for directed verdict or judgment n.o.v. *The appellate courts can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks any evidence by which it could be supported.*

---

[1] *Harris v. Harris*, 149 Ga. App. 842, 843 (256 SE2d 86) (1979).

(Citations and punctuation omitted; emphasis supplied.) *Cook v. Huff.*[2] See *Rafferzeder v. Zellner.*[3]

In determining whether the leasing operation was a partnership between the wife and the husband, the jury was instructed at length on the factors in this area. OCGA § 14-8-6 defines partnership as "an association of two or more persons to carry on as co-owners a business for profit." OCGA § 14-8-7 (3) provides that "[t]he sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived. . . ."

> Factors that indicate the existence of a partnership include a common enterprise, the sharing of risk, the sharing of expenses, the sharing of profits and losses, a joint right of control over the business, and a joint ownership of capital. But the intention of the parties is the true test of whether there is a partnership, which may be created by a contract.

(Citation omitted.) *Aaron Rents, Inc. v. Fourteenth Street Venture.*[4]

Some evidence showed that there was no commercial partnership between the spouses here. First and foremost, the husband unequivocally testified that there was no partnership and that he never intended to form a commercial partnership with his wife. Second, no documents reflected that a partnership existed: there was no written partnership agreement, there was no correspondence referencing a partnership, there were no partnership tax returns, there was no checking account in the name of a partnership, there was no tax identification number issued to a partnership, and there were no documents showing that any real or personal property was owned by a partnership entity. See *Andrews v. Messina*[5] (no partnership found where no written documents referred to partnership). Rather, all equipment of the leasing operation was owned in the individual or joint names of the wife and husband; the checking account into which the leasing proceeds were deposited was in the names of the wife and husband; the lease checks were written to the individual name of the wife; the income of the operation was reported on the couple's personal joint tax return; and the only document describing the nature of the operation referred to it as a sole proprietorship. Third, the net proceeds from the leasing operation were

---

[2] *Cook v. Huff*, 274 Ga. 186 (1) (552 SE2d 83) (2001).

[3] *Rafferzeder v. Zellner*, 272 Ga. App. 728, 729 (1) (613 SE2d 229) (2005).

[4] *Aaron Rents, Inc. v. Fourteenth Street Venture*, 243 Ga. App. 746, 747-748 (1) (533 SE2d 759) (2000), aff'd sub nom., *Accolades Apts. v. Fulton County*, 274 Ga. 28 (549 SE2d 348) (2001).

[5] *Andrews v. Messina*, 206 Ga. App. 742, 745 (3) (426 SE2d 641) (1992).

simply transferred to the family's joint checking account, with no designation of any portion of the monies as going to him or her individually. Finally, neither the couple's accountant nor their banker had even heard of any alleged partnership.

Because some evidence showed that no partnership existed between the parties, the trial court did not abuse its discretion in denying the wife's motion for new trial.

### Case No. A07A1133

2. The jury awarded $125,000 against the husband based on the evidence that, upon filing for divorce, he cut the wife off from the corporate assets, which they had both used for personal expenses before that time, and that he continued to use those assets for his personal use thereafter to her exclusion. "A fiduciary's duty of good faith prohibits him from appropriating for himself the assets and property of the corporation, to the exclusion of minority shareholders." *Quinn v. Cardiovascular Physicians, P.C.*[6]

The husband has appealed the award against him on numerous grounds. First, he contends that the trial court erred in allowing his wife as minority shareholder to bring a direct action against him for the alleged breaches of the fiduciary duties that he as majority shareholder and presiding officer owed her. This argument fails.

"The general rule is that a shareholder seeking to recover misappropriated corporate funds may only bring a derivative suit." *Thomas v. Dickson.*[7] See *Southwest Health & Wellness v. Work.*[8] However, there are two exceptions to this rule. First, a shareholder has standing to bring a direct action, seeking recovery on behalf of the shareholder individually, "if the suit alleges a special injury separate and distinct from that suffered by other shareholders, or alleges a wrong involving a shareholder contractual right existing apart from any right of the corporation." *Stoker v. Bellemeade, LLC.*[9] See *Grace Bros., Ltd. v. Farley Indus.*[10] Second, "a direct action may . . . be proper in the context of a closely held corporation *where the circumstances show that the reasons for the general rule requiring a derivative suit do not apply.*" (Punctuation omitted; emphasis in original.) *Southwest Health & Wellness*, supra, 282 Ga. App. at 626 (2) (c). See *Thomas*,

---

[6] *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 219 (5) (326 SE2d 460) (1985).

[7] *Thomas v. Dickson*, 250 Ga. 772, 774 (301 SE2d 49) (1983).

[8] *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 625 (2) (b) (639 SE2d 570) (2006).

[9] *Stoker v. Bellemeade, LLC*, 272 Ga. App. 817, 822 (3) (615 SE2d 1) (2005), rev'd in part on other grounds, *Bellemeade, LLC v. Stoker*, 280 Ga. 635 (631 SE2d 693) (2006).

[10] *Grace Bros., Ltd. v. Farley Indus.*, 264 Ga. 817, 819-820 (2) (450 SE2d 814) (1994).

supra, 250 Ga. at 774. The reasons for requiring derivative suits in an ordinary corporate context are:

> (1) to prevent multiple suits by shareholders; (2) to protect corporate creditors by ensuring that the recovery goes to the corporation; (3) to protect the interest of all the shareholders by ensuring that the recovery goes to the corporation, rather than allowing recovery by one or a few shareholders to the prejudice of others; and (4) to adequately compensate injured shareholders by increasing their share values.

(Punctuation omitted.) *Southwest Health & Wellness*, supra, 282 Ga. App. at 626 (2) (c).

Pretermitting whether the wife alleged any special injury, we hold that the trial court correctly found that the second exception applies here, as none of the four reasons for requiring a derivative suit was present. On appeal, the husband does not challenge that the first and third reasons were absent, nor could he. Since the wife and husband were the only shareholders to this close corporation, there was no threat of multiple suits nor any concern that a recovery would prejudice the rights of other shareholders. See *Stoker,* supra, 272 Ga. App. at 822-823 (3). Contrary to the argument of the husband, the second reason was also absent, for the husband testified that the corporation was paying its debts as they came due and that the corporation had no creditors who were at threat of not being paid. *Thomas,* supra, 250 Ga. at 775 (second factor not present where corporate debts being paid as due and no evidence of any creditor in need of protection). Finally, the fourth factor (adequate compensation available through increasing value of shares through derivative action) was absent "since, in a closely held corporation, there is no ready market for her shares." Id.

> Moreover, a direct suit with all the [shareholders] joined may prevent [the husband] from inappropriately sharing in the recovery, while providing an appropriate recovery to [the wife] who would gain no benefit from a derivative recovery on behalf of the [corporation] given the lack of a ready market for closely held [corporate shares].

*Stoker,* supra, 272 Ga. App. at 823 (3). The husband's argument that the wife could possibly obtain some sort of compensating monetary recovery in the pending divorce proceeding is speculative at best; indeed, that proceeding could well award her the same unmarketable shares in the corporation.

Accordingly, the trial court did not err in allowing the wife to bring a direct action against the husband for his breaches of fiduciary duty. See *Thomas*, supra, 250 Ga. at 775.

3. The husband's second enumeration of error claims that the court erred in denying his motion for directed verdict and subsequent motion for j.n.o.v. on the wife's fiduciary claim where the undisputed evidence allegedly showed that she had unclean hands (in that she also had appropriated corporate monies to personal use prior to the divorce petition being filed). However, "the doctrine of clean hands has no application in a suit for damages for breach of a fiduciary relationship." *Gibbs v. Dodson.*[11] Here, the jury simply awarded compensatory damages for breach of the fiduciary relationship, and any equitable relief was to be considered by the court in a later proceeding. Because the judgment appealed from is a judgment at law for compensatory damages flowing from the husband's breach of fiduciary duty following the filing of the divorce petition (regardless of whatever equitable relief may have also been sought), the equitable principle of clean hands does not apply. *Zappa v. Automotive Precision Machinery.*[12] See *Park v. Fortune Partner, Inc.*[13] *Claire v. Rue de Paris, Inc.,*[14] cited by the husband, is distinguishable since it was applying the doctrine of clean hands to the equitable relief sought by the plaintiff there.

4. In his third and eighth enumerations of error, the husband urges that the trial court erred in allowing the wife to argue that he carried the burden to prove that thousands of dollars in corporate charges for his personal expenses (after he shut her out from the corporation) were properly disclosed and approved or were fair under the criteria of OCGA § 14-2-860 et seq., and in giving a jury charge on the matter. We find nothing wrong with the wife's argument or with the jury instruction.

Under OCGA § 14-2-860 et seq., upon a showing that an officer or director had a beneficial financial interest in a transaction with the corporation (such that it would reasonably be expected to influence his judgment in voting on the transaction), the burden of proof devolves upon the officer or director to show that the transaction received proper approval or was fair to the corporation. "[A] director's conflicting interest transaction will be secure against judicial intervention if the interested director can establish that the transaction was fair to the corporation." Official Comment to OCGA § 14-2-861.

---

[11] *Gibbs v. Dodson*, 229 Ga. App. 64, 67 (1) (492 SE2d 923) (1997).

[12] *Zappa v. Automotive Precision Machinery*, 205 Ga. App. 584, 585 (2) (423 SE2d 286) (1992).

[13] *Park v. Fortune Partner, Inc.*, 279 Ga. App. 268, 273-274 (6) (630 SE2d 871) (2006).

[14] *Claire v. Rue de Paris, Inc.*, 239 Ga. 191, 193-194 (236 SE2d 272) (1977).

"The burden of proof on the questions of good faith, fair dealing, and loyalty is placed upon the officer who appropriated the opportunity." (Punctuation omitted.) *Bob Davidson & Assoc. v. Norm Webster & Assoc.*[15] Accordingly, we find nothing wrong with the wife's closing argument or with the judge's instructions reiterating this law. Cf. *Dunaway v. Parker*[16] (evidence that the corporation paid thousands of dollars to defendant CEO with no record that such represented legitimate loan transactions sustained verdict against defendant).

5. In his fourth enumeration of error, the husband argues that the trial court erred in charging the jury that he bore the burden of proof as to his defenses. However, the context of the court's instructions reflects that the court was referring to the husband's affirmative defenses and to the husband's need to justify conflicting interest transactions as discussed in Division 4 above. See *Mahsa, Inc. v. Al-Madinah Petroleum*[17] (party asserting affirmative defense bears burden of proof as to that defense). We discern no error.

6. In his fifth, sixth, and ninth enumerations of error, the husband complains that the court refused to allow him to introduce additional evidence concerning the basis for the $11,000 monthly payment to the wife (admittedly serving as temporary support pending the divorce trial) and to charge the jury that based on this payment, they could find in favor of the husband under the doctrines of set-off or accord and satisfaction. Specifically, he claims that the additional evidence would have shown that of the $11,000 paid monthly to the wife, $7,000 represented a payout of the alleged partnership income. His counsel argued that "these parties had an agreement with respect to the disposition of the K & S [Leasing] income. The K & S income, it was agreed that she would get $7,000 of that, and [the husband] would retain the balance [to pay other expenses of hers]." He claims that this temporary support agreement constituted a set-off or an accord and satisfaction of the claims now made regarding his breach of fiduciary duties as an alleged partner in the K & S Leasing operation.

These matters are all moot in light of the jury verdict finding in favor of the husband on the partnership issue, when the jury found no partnership existed and awarded the wife nothing on her partnership claims. See *Todd v. Martinez Paint & Body*[18] (exclusion of evidence relating to issue on which appellant prevailed is moot ruling).

---

[15] *Bob Davidson & Assoc. v. Norm Webster & Assoc.*, 251 Ga. App. 56, 62 (3) (553 SE2d 365) (2001).

[16] *Dunaway v. Parker*, 215 Ga. App. 841, 850 (5) (453 SE2d 43) (1994).

[17] *Mahsa, Inc. v. Al-Madinah Petroleum*, 276 Ga. App. 890, 895 (3) (a) (625 SE2d 37) (2005).

[18] *Todd v. Martinez Paint & Body*, 238 Ga. App. 128, 134 (2) (b) (517 SE2d 844) (1999).

7. In his seventh enumeration of error, the husband contends that the court erred in charging the jury that a corporate officer's fiduciary duty toward the corporation and its shareholders required him to exercise "all due care and diligence." He argues that the relevant standard of care found in OCGA § 14-2-842 (a) (2) is a lesser standard, requiring the officer to act "[w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances."

We hold that there is no meaningful difference between the two standards. The latter standard essentially sets forth the ordinary diligence or negligence standard referenced in OCGA § 51-1-2 ("ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances"), which has been held to require the defendant to exercise "all due care and diligence." *Atlantic Coast Line R. Co. v. Anderson.*[19] Indeed, even in this case, the court first charged the standard as worded in OCGA § 14-2-842 (care of ordinarily prudent person) and then simply explained this standard further as referring to "all due care and diligence." We discern no error.

8. In his final enumeration of error, the husband argues that the trial court erred in denying two post-verdict motions to recuse the trial judge. However, the husband states in both his main appellate brief and in his reply brief that we need only rule on this enumeration should we decide to remand the matter for a new trial. As we are affirming, we need not address this issue.

*Judgment affirmed in both cases. Bernes, J., concurs. Ruffin, J., concurs in the judgment only.*

### ON MOTION FOR RECONSIDERATION.

Appellant William Spencer Rosenfeld has moved this Court to reconsider its opinion, arguing that the Court erred in its disposition of his fifth, sixth, and ninth enumerations of error (Division 6). We disagree and accordingly deny the motion for reconsideration.

Appellee Mary K. Rosenfeld has also suggested to this Court that we ought to revise Division 7 of our opinion, in which we address a jury charge regarding a corporate officer's fiduciary duty toward the corporation and its shareholders. OCGA § 14-2-842 (a) (2) sets forth this duty statutorily as requiring an officer to exercise "the care an ordinarily prudent person in a like position would exercise under similar circumstances." Citing *Flexible Products Co. v. Ervast,*[20] the

---

[19] *Atlantic Coast Line R. Co. v. Anderson,* 75 Ga. App. 829, 834 (3) (44 SE2d 576) (1947).
[20] *Flexible Products Co. v. Ervast,* 284 Ga. App. 178, 182 (2) (b) (ii) (643 SE2d 560) (2007).

wife argues that the standard of care is not ordinary diligence and that an officer need only act in good faith to avoid liability.

This is inaccurate. OCGA § 14-2-842 (a), which governs, requires that to avoid liability, an officer must act in good faith ("[i]n a manner he believes in good faith to be in the best interests of the corporation") *and* with due care ("[w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances"). See *Parks v. Multimedia Technologies*.[21] As we state in our opinion above, this due care is in all material respects identical to the ordinary diligence defined in OCGA § 51-1-2 ("ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances"). *Flexible Products*, supra, is distinguishable on its facts and is inapplicable. Accordingly, the appellee's suggestion to revise the opinion is also denied.

*Motion for reconsideration denied.*

DECIDED MAY 24, 2007 —
RECONSIDERATION DENIED JUNE 22, 2007 — ▪▪▪

*Taylor, Busch, Slipakoff & Duma, William G. Leonard, David J. Hungeling*, for appellant.

*Weinstock & Scavo, Michael Weinstock, John P. Wilson III, Fine & Block, John B. Levy, Schiff Hardin, Walter H. Bush, Jr.*, for appellee.

---

[21] *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 289 (3) (b) (520 SE2d 517) (1999).